IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESCO INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 716 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SUZANNE REGAS, DIANE GOLDRING | ) | |
| NESBITT, AND CONTINENTAL | ) | |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wesco Insurance Company ("Wesco") filed a two-count complaint against defendants Suzanne Regas ("Regas"), Diane Goldring Nesbitt ("Goldring"), and Continental Casualty Company ("Continental"), seeking a declaratory judgment that it has no duty to defend or indemnify Regas against a lawsuit filed by Goldring in the Northern District of Illinois entitled Nesbitt v. Regas, No. 13-CV-8245 (the "Underlying Action"). On April 4, 2014, Continental filed a cross-claim against Regas and Goldring, also seeking a declaratory judgment that it is not obligated to defend or indemnify Regas in the Underlying Action. Having failed to timely answer or appear, Regas is in default. On August 5, 2014, Wesco filed the instant motion for summary judgment pursuant to Fed. R. Civ. P. 56, and on August 7, 2014, Continental filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Defendant Goldring is the only party contesting either motion. For the reasons discussed below, Wesco's motion for summary judgment and Continental's motion for judgment on the pleadings are granted.

## BACKGROUND[1]

On September 16, 2010, Regas was named as a defendant in a lawsuit filed in the Circuit Court of Cook County, Illinois, entitled Moser v. Regas, No. 10-L-10628 (the "Moser Action"). On September 29, 2010, Regas gave notice of the Moser Action to Continental, requesting that the company defend and indemnify her pursuant to the lawyers professional liability policy she had entered into with Continental. The policy period for Continental's policy ran from October 1, 2009, to October 1, 2010. Pursuant to the policy, Continental defended Regas in connection with the Moser Action.[2]

On November 15, 2013, Regas was sued in the Underlying Action. In response, Regas filed a claim with Wesco, asking the company to defend and indemnify her pursuant to the lawyers professional liability insurance policy issued to Regas on October 13, 2013. Wesco subsequently initiated the instant action, seeking a declaration of rights under the policy.

---

[1] The following facts are, unless otherwise specified, undisputed and come from Wesco and Goldring's Local Rule 56.1 statements. However, Goldring's response to Wesco's L.R. 56.1 statement contains improper answers. L.R. 56.1(b)(3) requires "a concise response to the movant's statement." The court reminds counsel that the purpose of L.R. 56.1 statements is to "identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments." Warner Bros. Entm't, Inc. v. Synergex Corp., No. 12-C-8483, 2014 WL 518085, at *1 (N.D. Ill. Feb. 10, 2012).

[2] As an example of Goldring's improper L.R. 56.1 statement responses, Goldring responds to several of Wesco's statements by stating "[d]isputed to the extent that the cited exhibits do not support the statement from which they are cited." Since Goldring disputes only the citations, and not the underlying statement, the court considers these statements admitted. See, e.g., Stevo v. Frasor, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote clarity of summary judgment filings."); McGuire v. United Parcel Serv., 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission.").

The Moser Action and the Underlying Action share similar facts and allegations. Both lawsuits allege a widespread and long-lasting conspiracy, in which Regas' father, James Regas, and Christian Nesbitt engaged in a scheme to defraud Western Springs National Bank and Trust ("Western Springs Bank") through the issuance of improper loans. The scheme relied on inflated appraisals of properties and the creation of numerous corporate entities to act as loan recipients. The Moser plaintiffs were Western Springs Bank shareholders who sought to recover losses associated with the scheme. The Moser Action alleged that Regas, Frezados, & Dallas, LLP ("RFD"), of which Regas was associated,[3] concealed material information from Western Springs Bank and its Board of Directors, and assisted in making improper loans in violation of both its fiduciary duties as general legal counsel to the bank and federal laws. As it pertains to the Underlying Action, Goldring guaranteed several of the allegedly illegal loans, and alleges that James Regas and Christian Nesbitt misrepresented the nature of those loans and omitted material facts when soliciting her guarantees. The Underlying Action alleges that while employed at RFD, defendant Regas provided legal assistance that furthered the fraud and helped the conspirators violate section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

---

[3] RFD responded to subpoenas issued by Nesbitt in the Underlying Action by declaring that Regas "was never an employee of the Firm" and had "never received compensation from the Firm." Because the exact nature of Regas' professional relationship with RFD is not relevant to the outcome of this motion, the court does not address the issue.

**DISCUSSION**

I.  **Motion for Summary Judgement (Wesco)**

    A.  **Legal Standard**

A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 650 (7th Cir. 1987); Fisher v. Transco Services–Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

    B.  **Analysis**

Wesco argues that it does not have a duty to defend or indemnify Regas in the Underlying Action because the Underlying Action does not fall within Regas' insuring agreement. As an initial matter, in determining whether Wesco has a duty to defend or indemnify, the court must apply the substantive law of the forum state. Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir 2000). The forum state in this case is Illinois; therefore, under Illinois choice of law principles, insurance contracts are construed according to the law of the state with the "most significant contacts" with the policy. Id. Because the parties agree that Illinois law governs interpretation of the policy in question, the court proceeds under the same assumption.

4

The construction of an insurance policy and any determination of the rights and obligations under it are questions of law for the court and are appropriate for disposition on summary judgment. Cent. Illinois Light Co. v. Home Ins. Co., 213 Ill. 2d 141, 153 (2004). When construing the language of an insurance policy, the primary goal is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. Id. To determine the meaning of the wording of the policy and the intent of the parties, the policy must be construed "as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purpose of the entire contract." Outboard Marine Corp. v. Liberty Mutual Ins. Co., 154 Ill. 2d 90, 108 (1992). The construction given to an insurance policy should be natural and reasonable and if the "words in the policy are plain and unambiguous, they will be afforded their plain, ordinary meaning and be applied as written." Valley Forge Ins. Co. v. Swiderski Electronics, Inc., 359 Ill. App. 3d 872, 883 (2005). If, however, "the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed strictly against the drafter of the policy and in favor of coverage." Id. at 884.

   1.   **Duty to Defend**

Goldring first argues that Wesco's motion as to its duty to defend should be denied, or at least continued under Fed. R. Civ. P. 56(d), because Goldring has not taken extensive discovery in the Underlying Action.[4] Contrary to Goldring's contention, the paucity of discovery in the Underlying Action does not prevent Goldring from being able to fully respond to Wesco's present motion. As an initial matter, Fed. R. Civ. P. 56(b) permits a party to file a motion for

---

[4] At the time of Goldring's response, the Underlying Action was stayed pending resolution of defendants' motion to dismiss.

summary judgment at any time up until 30 days after the close of discovery, thereby negating Goldring's argument that Wesco's motion is premature. Moreover, in determining whether an insurer has a duty to defend, the court merely compares the underlying complaint to the insurance policy's relevant coverage provision. See Connecticut Indem. Co. v. DER Travel Serv., Inc., 328 F.3d 347, 349 (7th Cir. 2003). Both documents are currently before the court, making additional discovery unnecessary. Finally, Goldring is essentially asking the court to stay the present matter in favor of the Underlying Action, even though a motion to stay is not properly before the court. The court rejects Goldring's argument that ruling on Wesco's motion for summary judgment is premature.

Turning to the merits of Wesco's motion, as discussed above, whether the insurer has the duty to defend, requires a comparison between the allegations of the underlying complaint and the relevant coverage provisions of the insurance policy. Id. The threshold is low, and if the facts alleged in the underlying complaint fall even potentially within the policy's coverage, the duty to defend arises. Valley Forge Ins. Co., 359 Ill. App. 3d at 884, citing Outboard Marine Corp., 154 Ill. 2d at 108. The underlying complaint and the policy are to be liberally construed in favor of the insured, with all doubts and ambiguities construed in favor of the insured. Id. "However, an insurer has no duty to defend where it is 'clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'" DER Travel Service, Inc., 328 F.3d at 349, quoting U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 73 (1991).

Wesco presents two arguments why the Underlying Action does not fall within Regas' insurance policy. First, Wesco contends that the Underlying Action does not arise out of legal

6

services as defined by the policy. The policy states that Wesco will "pay on behalf of the Insured" claims that arise "out of an act or omission in the performance of legal services by the Insured." "Legal services" are defined in the policy as "those services performed by an Insured for others as a lawyer . . . but only if such services are performed for a fee that inures to the benefit of the Named Insured . . . ." Wesco argues that because "the acts or omissions for which Suzzane Regas is being sued [in the Underlying Action] took place while Suzanne Regas was an Associate in the RFD law firm . . . . any 'benefit' from any fees charged by RFD for the services performed by its lawyers would have inured to the benefit of RFD, and not" Regas. As such, Wesco argues that the Underlying Action does not arise out of legal services as the term is defined in the policy, thereby placing the Underlying Action outside of the policy coverage.

Wesco's argument fails for several reasons. First, the factual allegations in the underlying complaint, not the legal theories, determine whether a duty to defend arises. <u>Valley Forge Ins. Co.</u>, 359 Ill. App. 3d at 884. Wesco's argument concerning what constitutes legal services is purely legal, and thus not a basis for determining whether it has a duty to defend. Additionally, as Goldring points out, RFD responded to subpoenas in the Underlying Action by declaring that Regas "was never an employee of the Firm" and had "never received compensation from the Firm." Therefore, if Regas performed legal work in furtherance of the alleged conspiracy, there is a question of fact over who benefitted from any fees that were paid for her services.

Even if Regas was employed by RFD at the time she rendered legal services, Wesco's proposed reading of the policy is nonsensical. It is not surprising that Wesco does not support its argument with any legal authority. Wesco rests its argument on the fact that RFD is a

7

partnership, and that partnerships are distinct legal entities from their members. But it does not logically follow that an associate does not benefit from legal fees paid to her employer. Law firms pay associates out of earned legal fees, and associates benefit from working at a firm that collects the fees generated by its associates' legal services.

Moreover, had Wesco wanted to substantially limit the scope of the coverage it provided, it could have drafted the policy language to define legal services as only those that result in direct *payments* to the named insured. Instead, of using the word "payment," the policy language requires that the "fee inure[] to the *benefit* of the named insured." (Emphasis added.) Use of the word "benefit" instead of "payment" seems to expand, rather than contract, the scope of the policy. Where, as here, the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and are to be construed strictly against the drafter of the policy and in favor of coverage. Valley Forge Ins. Co., 359 Ill. App. 3d at 883. Consequently, the court rejects Wesco's argument that the Underlying Action does not arise out of legal services as defined by the policy.

Wesco next argues that the Underlying Action does not fall within Regas' insuring agreement because Regas gave notice to another insurer (Continental) of an action that alleges the same or related acts as the Underlying Action, prior to the inception date of the present policy. The Wesco policy, section I(A)(1), states that coverage is available only if, "prior to the inception date of the policy period, the Insured did not give notice under any other insurance policy of such claim or related claim or such act or omission or related act or omission." The policy defines "related claim" as "all claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of legal services." "Related act or omission" is

defined as "all acts or omissions in the rendering of legal services that are temporally, logically or casually connected by any common fact, circumstance, situation, transaction, event, advice or decision." Wesco contends that because the Underlying and Moser Actions allege the same scheme and facts, they are related claims under the insurance policy.

It is undisputed that Regas gave notice of the Moser Action to Continental, requesting that the company defend and indemnify her pursuant to the professional liability policy Regas entered into with Continental, prior to the inception date of the Wesco policy. Thus, the only question is whether the Moser Action is "related" to the Underlying Action. Goldring argues that the two lawsuits are not related because the Moser claims did not arise out of the rendering of legal services, but instead concerned Regas' role as a shareholder. To support this contention, Goldring points to the fact that the Moser allegations against Regas were dismissed after Regas submitted an affidavit stating that she had not provided legal services to any of the Moser plaintiffs. The court disagrees.

Both the Underlying complaint and the Moser complaint lodge allegations against Regas as an attorney and shareholder, thereby making Goldring's distinction artificial. In addition to fraud and conspiracy claims, the Moser complaint also asserted claims against RFD, including Regas, for professional negligence and breach of fiduciary duty arising out of legal services rendered by RFD. Moreover, the state court's order dismissing Regas from the Moser Action does not specify the grounds upon which the action was dismissed, and therefore this court cannot conclude that it was dismissed because Regas did not perform legal services for the Moser plaintiffs. Even assuming that the state court dismissed the Moser Action's allegations against Regas because she did not render legal services to the Moser plaintiffs, Regas' denial

9

demonstrates that the Moser plaintiffs' claims were that Regas acted as a lawyer. More importantly, because the duty to defend is based on a review of the complaint, and not the outcome of the action, the state court's finding concerning whether Regas acted as a lawyer for the Moser plaintiffs is irrelevant.

The policy language at issue here is sweeping. As discussed above, Wesco's policy defines "related act or omission" as "all acts or omissions in the rendering of legal services that are temporally, logically or casually connected by any common fact, circumstance, situation, transaction, event, advice or decision." The Moser and Underlying Actions are nearly indistinguishable: the cases share six of the same defendants and both allege that the defendants, including Regas, engaged in a conspiracy to defraud financial institutions and obtain unlawful loans. The Moser Action, filed in state court, alleges a "civil conspiracy," while the Underlying Action, initiated in federal court, frames the conspiracy as a RICO violation. Both lawsuits also include allegations of fraud against Regas and the other defendants, and both lawsuits allege that Regas is an attorney associated with RFD. In describing the Underlying Action to Wesco, Regas stated that "Nesbitt basically copied a lawsuit filed against the same defendants in Moser." While the Moser Action may have pursued distinct legal claims against Regas, under the policy language the two actions are clearly related. Consequently, Wesco has no duty to defend Regas in the Underlying Action, because Regas gave notice of the Moser claim to another insurer prior to the effective date of the Wesco policy.

### 2. Duty to Indemnify

Goldring argues that Wesco's motion as to the insurer's duty to indemnify should be denied as premature. Citing Outboard Marine Corp., 154 Ill. 2d at 127, Goldring contends that

10

under Illinois law, "the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it." However, as Wesco points out, subsequent to Outboard, the Illinois Supreme Court held that because the duty to defend is broader than the duty to indemnify, "where no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage." Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 398 (1993) (emphasis included). Accordingly, Wesco argues that "once one has determined that there is no duty to defend under a liability insurance policy, one has also determined that there is no duty to indemnify." The court agrees.

In addition to Outboard, Goldring relies on Grinnell Mut. Reinsurance Co. v. Reinke, 43 F.3d 1152, 1154 (7th Cir. 1995), in which the court refused to address the insurer's duty to indemnify even though it had already determined that the insurer had no duty to defend. Because the Grinnell court did not discuss Crum, the court finds the case unpersuasive. The fact that the Grinnell court did not even mention the Illinois Supreme Court decision leads this court to conclude that it may have been inadvertently overlooked by counsel on the Seventh Circuit.

Moreover, the Seventh Circuit has since ruled in line with Crum. For example, in Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc., 566 F.3d 689, 693 (7th Cir. 2009) (applying Illinois law), the court, citing Crum, held that "[w]here . . . the duty to defend is broader than the duty to indemnify, a finding of no duty to defend necessarily precludes a finding of a duty to indemnify." See also Sokol & Co. v. Atlantic Mut. Ins. Co., 430 F.3d 417, 421 (7th Cir. 2005) (noting that Crum "appears to state a general rule that 'where there

11

is no duty to defend, there will be no duty to indemnify.'") Illinois courts have also continued to follow Crum.  See, e.g., Metzger v. Country Mut. Ins. Co., 986 N.E.2d 756, 761 (Ill. App. Ct. 2013).

In Selective Ins. Co. of South Carolina v. Cherrytree Companies, Inc., 998 N.E.2d 701, 708 (Ill. App. Ct. 2013), the court stated that "*Crum* does not stand for a general proposition that when an insurer has no duty to defend, then it will not have a duty to indemnify."  However, this case is also unpersuasive.  Unlike the present action, there was no underlying lawsuit in Cherrytree, and therefore no determination of whether the insurer had a duty to defend.  Instead, the Cherrytree court was called upon to determine whether the insurer had a duty to indemnify where no lawsuit had ever been filed.  Similarly, Goldring's reliance on Lear Corp. v. Johnson Elec. Holdings, Ltd., 353 F.3d 580, 583 (7th Cir. 2003), is misplaced because the court applied Delaware, not Illinois, law.

For the reasons discussed above, the court concludes that in the context of the instant case, where there is no duty to defend, and the claims do not even potentially fall within the policy, there is no duty to indemnify.  See, e.g., Momence, 566 F.3d at 693 ("Holding that an insurer has no duty to indemnify therefore follows inexorably from holding that an insurer has no duty to defend."); Metzger, 986 N.E.2d at 761.  Having already found that Wesco has no duty to defend Regas in the Underlying Action, Wesco's motion for summary judgment as to its duty to indemnify Regas in the Underlying Action is also granted.

## II. Judgment on the Pleadings (Continental)

### A. Legal Standard

A party may move for a judgment on the pleadings at any time after the pleadings are closed, so long as the motion is made early enough not to delay trial. Fed. R. Civ. P. 12(c). Judgment pursuant to Rule 12(c) is appropriate when "'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000), quoting Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir. 1989). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See id. at 368 n.6. Accordingly, in considering a 12(c) motion, the court accepts all well-pled allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. Id. at 368.

### B. Analysis

#### 1. Duty to Defend

Continental first argues that the facts of the complaint establish that it has no duty to defend or indemnify Regas in the Underlying Action because the acts or omissions alleged as pertain to Regas occurred prior to the beginning of the policy period. Regas' Continental policy, section I(A), provides that Continental "agrees to pay on behalf of the Insured all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages and claim expenses," provided that "the act or omission occurred on or after 10/01/2009." In support of this argument, Continental relies on Goldring's answer to its cross-claim, stating that Goldring "admits that her Complaint does not describe a particular action by Regas on or after October 1, 2009." Based on this, Continental contends that the undisputed facts establish that "there is no

13

coverage for the Underlying Action under the Policy and judgment in favor of Continental is appropriate."

Goldring argues that her full answer to Continental's cross-claim – that the complaint alleges a lengthy conspiracy – creates a factual dispute. She further contends that the nature of her complaint, "participation in a conspiracy," prevents her from pleading dates with specificity, because such information "is within the knowledge and control of the defendant," and has not been the subject of discovery. Goldring argues that the complaint's allegations that Regas acted as an agent to several of the entities created by her co-conspirators, that through these entities James Regas and Christian Nesbitt siphoned illegally obtained funds, and that both the legal work performed to create the entities and defraud the banks was done by RFD attorneys, one of whom was Regas, are sufficient to trigger Continental's duty to defend. The court disagrees.

The court must determine whether Continental has a duty to defend based on the allegations of the Underlying complaint as they are currently pled, not based on the possibility of future discovery and/or amendments to the complaint. DER Travel Services, Inc., 328 F.3d at 350-51 ("[I]t is the actual complaint, not some hypothetical version, that must be considered."). Consequently, the fact that Goldring alleges a conspiracy, which, by its nature, is shrouded in secrecy, does not constitute a valid reason for denying Continental's motion. As the complaint currently stands, it does not allege any actions taken by Regas within the policy period. In fact, the complaint does not make any allegations against any of the defendants, let alone Regas, concerning acts that occurred after October 1, 2008. Even accepting Goldring's contention that the scheme the defendants engaged in was a lengthy conspiracy, there is nothing in the Underlying complaint to indicate that it continued past 2008.

14

The court agrees with Goldring that, as was held in Int'l Ins. Co. v. Rollprint Packaging Products, Inc., 312 Ill. App. 3d 998, 1007 (2000), coverage does not "hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." However, unlike in Rollprint, where the plaintiff's factual allegations were subject to multiple interpretations, the facts as alleged here, even if construed liberally, do not articulate any act that occurred on or after October 1, 2009. Because Regas' policy with Continental covered only acts or omissions in the performance of legal services rendered by the insured that occurred on or after October 1, 2009, and none of the allegations in the Underlying Complaint specify acts or omissions taken by Regas (or any of the defendants) on or after that date, the Underlying Action does not fall within the scope of the insurance policy's coverage. See DER Travel Service, Inc., 328 F.3d at 349, quoting Wilkin Insulation Co., 144 Ill. 2d at 73 ("[A]n insurer has no duty to defend where it is 'clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'") Accordingly, Continental has no duty to defend Regas in the Underlying Action.

In its reply brief, Continental raises, for the first time, that it has no duty to defend or indemnify Regas in the Underlying Action because the complaint does not allege "mistakes or errors inherent in the practice of law and therefore do not implicate the insuring agreement of the Policy." Because Goldring has not had the opportunity to respond to this argument, and the court has already found that Continental has no duty to defend based on other grounds, the court will not address this argument. See HSBC Bank USA, N.A. v. Hardman, No. 12-C-00481, 2013 WL 515432, at *4 (N.D. Ill. Feb. 12, 2013) ("arguments raised for the first time in the reply are waived").

15

**2.     Duty to Indemnify**

Consistent with the court's discussion above, because Continental does not have a duty to defend Regas in the Underlying Action, and the facts alleged do not even potentially fall within the insurance coverage, nor does Continental have a duty to indemnify Regas in the Underlying Action. As such, Continental's motion for judgment on the pleadings is granted as to its duty to indemnify.

## CONCLUSION

For the reasons set forth above, Wesco's motion for summary judgment is granted, declaring that it has no duty to defend or indemnify Regas in the Underlying Action. Likewise, Continental's motion for judgment on the pleadings is also granted, declaring that it has no duty to defend or indemnify Regas in the Underlying Action.

**ENTER:** February 3, 2015

_____
**Robert W. Gettleman
United States District Judge**